```
          UNITED STATES DISTRICT COURT
             DISTRICT OF MINNESOTA
           Civil No. 07-2190 (DSD/SRN)
```

John Doe and Jane Doe,

      Plaintiffs,

v.                                                                         **ORDER**

Shaun E. LaDue, individually and
in his official capacity of Chief
of Police of the Owatonna Police
Department, Ricardo Magana,
individually and in his official
capacity, Tim Hassing, individually
and in his official capacity, Mike
Earl, individually and in his official
capacity, Willie Goodsell, individually
and in his official capacity, Jay
Matejcek, individually and in his
official capacity, John Roes I through
V, individually and in their official
capacities, and the City of Owatonna,
Minnesota,

      Defendants.


    Frederick J. Goetz, Esq. and Goetz & Eckland PA, 43 Main
    Street Southeast, Suite 400, Minneapolis, MN 55414,
    counsel for plaintiffs.

    Jason M. Hiveley, Esq., Jon K. Iverson, Esq. and Iverson
    Reuvers, LLC, 9321 Ensign Avenue South, Bloomington, MN
    55438, counsel for defendants.


    This matter is before the court on plaintiffs' motion for a preliminary injunction. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants plaintiffs' motion.

**BACKGROUND**

On September 20, 1991, plaintiff John Doe was convicted of one count of a lewd act upon a child under the age of fourteen in violation of California Penal Code § 288(a). Doe was placed on probation for five years and, under California law, subjected to lifetime predatory offender registration. After the incident, in May of 1992, Doe and his family moved from California to Owatonna, Minnesota. Pursuant to Minnesota Statutes § 243.166, plaintiff's lifetime registration requirement followed him to Minnesota. Therefore, in compliance with Minnesota law, Doe initially registered as a predatory offender by providing the Minnesota Bureau of Criminal Apprehension ("BCA") with his fingerprints, a photograph and information regarding his whereabouts, residences, places of employment and vehicle make and model. At that time, the Minnesota Department of Public Safety and the BCA determined that Doe's risk level was "not assigned." (Goetz Aff. Ex. 1.) After the initial registration, Doe completed annual BCA address verification forms as required by Minnesota law.

In December of 2004, defendant Shaun E. LaDue became chief of the Owatonna police department ("OPD"). Under LaDue's leadership, the OPD instituted a proactive compliance or verification approach in monitoring registered predatory offenders. The proactive approach, as advocated in the BCA predatory offender training manual, recommends that local police departments conduct quarterly

visits to the last known address of every predatory offender in their jurisdiction. (Hiveley Aff. Ex. A.) During such visits, conducted on a random basis four times per year, OPD officers seek face-to-face contact with the registered offender to verify the BCA's identification and registration information. Additionally, once a year on a random basis, OPD officers visit an offender's home to photograph the offender and his or her vehicles.

Doe claims that these visits, often made by officers in marked squad cars who demand to meet with Doe personally and return to his home until he meets their demands, have injured him and his family. Doe argues that he was threatened with arrest and prosecution for violating his registration requirements if he did not fully comply with the officers' requests. He claims that the visits have subjected him and his family to a negative social stigma and resulted in de facto community notification of his past criminal wrongdoing. Further, he asserts that the officers have, without any reasonable or articulable suspicion of wrongdoing, seized him and entered his house at all hours of the day and night, thereby interrupting the quiet enjoyment of his home.

On May 4, 2007, Doe and his wife, plaintiff Jane Doe, filed this action against LaDue, the City of Owatonna and OPD officers. Doe argues that the OPD's proactive enforcement practices extend beyond the measures authorized by Minnesota Statutes §§ 243.166 and 244.052 and violate his Fourth Amendment right to be free from

unreasonable search and seizure and his Fourteenth Amendment rights of due process and equal protection. Doe also asserts claims against LaDue and other OPD officers individually under 42 U.S.C. § 1983. Plaintiffs now move the court for a preliminary injunction to halt the OPD's use of the proactive approach to predatory offender monitoring.

**DISCUSSION**

The court examines four factors when considering whether to grant preliminary injunctive relief. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 112-14 (8th Cir. 1981). Those factors are (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief would cause to the other litigants, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest. See id. at 112-14. The court balances the four factors to determine whether injunctive relief is warranted. See Northland Ins. Cos. v. Blaylock, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000). The movant bears the burden of proof concerning each factor. See Gelco v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). The likelihood of success on the merits is not, alone, determinative. See Dataphase, 640 F.2d at 113. Instead, the court considers the particular circumstances of each case, remembering that the primary question is whether the "balance

of equities so favors the movant that justice requries the court to intervene to preserve the status quo until the merits are determined." Id.  If the threat of irreparable harm to the movant is slight when compared to likely injury to the other party, the movant carries a particularly heavy burden of showing a likelihood of success on the merits.  See ASICS Corp. v. Target Corp., 282 F. Supp. 2d 1020, 1025 (D. Minn. 2003).

**I.   Threat of Irreparable Harm**

Plaintiffs must first establish that irreparable harm will result without injunctive relief and that such harm will not be compensable by money damages.  See Blaylock, 115 F. Supp. 2d at 1116.  Possible or speculative harm is not enough.  See Graham Webb Int'l v. Helene Curtis, Inc., 17 F. Supp. 2d 919, 924 (D. Minn. 1998).  Rather, the party seeking the injunctive relief must show a significant risk of harm exists.  Johnson v. Bd. of Police Comm'rs, 351 F. Supp. 2d 929, 945 (E.D. Mo. 2004).  The absence of such a showing alone is sufficient to deny a preliminary injunction.  See Gelco, 811 F.2d at 420.

The court finds that the threat of irreparable harm to plaintiffs weighs in favor of granting a preliminary injunction. It is undisputed that OPD officers have subjected Doe to searches and seizures of his person.  Doe contends that the OPD has carried out these searches and seizures without probable cause or reasonable suspicion of wrongdoing.  Defendants argue that the BCA

training manual advocates such practices and that Minnesota Statutes § 243.166 does not prohibit them. A state agency's training manual, however, does not override the Supreme Court's directive that government officials cannot undertake a "search or seizure absent individualized suspicion." See Chandler v. Miller, 520 U.S. 305, 308 (1997).[1] Nor does a state law's failure to prohibit a constitutionally violative practice make it tenable. Doe has complied with his annual registration without incident for thirteen years and carries the lowest risk level possible - "not assigned." Further, defendants have offered no evidence of probable cause or reasonable suspicion that exists to justify the searches and seizures of Doe and the accompanying disruption of his family. Therefore, based on the evidence currently before it, the court finds that the OPD's methods have violated Doe's Fourth Amendment rights in the past and threaten to cause him future harm. Accordingly, this factor weighs in favor of injunctive relief for plaintiffs.

## II.  Balance of Harms

Under the second factor, the court considers whether the

---

[1] The Court has identified limited exceptions to the individualized suspicion requirement, particularly in the areas of drug testing and administrative inspections. See City of Indianapolis v. Edmond, 531 U.S. 32, 37 (2000) (collecting cases); see also Samson v. California, 126 S. Ct. 2193, 2202 (2006) (parolees subject to suspicionless searches). The OPED's behavior here, however, does not fall within a recognized exception.

irreparable harm to the movant outweighs any potential harm to the nonmovants should the injunction issue. See Dataphase, 640 F.2d at 114. Defendants argue that plaintiff is not harmed because his 1991 conviction mandated registration and he is merely objecting to the impact of that requirement. The court finds that the OPD's practices have gone beyond the registration requirement and caused plaintiffs considerable harm. Defendants, meanwhile, have not suggested how a preliminary injunction would harm them. Further, enjoining the proactive methods does not keep defendants from monitoring Doe. The BCA advocates a reactive approach - the method the OPD used before LaDue's tenure - that enables law enforcement to monitor predatory offenders through annual registration. (See Hiveley Aff. Ex. A.) Accordingly, this factor also supports the issuance of an injunction.

**III.  Likelihood of Success on the Merits**

The third factor questions whether the movant will likely prevail on the merits. While not overriding the other factors, the likelihood of success on the merits is preeminent. See Halikas v. Univ. of Minn., 856 F. Supp. 1331, 1335 (D. Minn. 1994). Defendants argue that plaintiffs have not demonstrated a likelihood of success on the merits because LaDue, the OPD officers, and the City of Owatonna are entitled to qualified immunity. Plaintiffs allege that the OPD's proactive monitoring approach violated Doe's clearly established Fourth Amendment right to be free from

unreasonable search and seizure[2] and that defendants are not entitled to qualified immunity.

The applicability of qualified immunity is a question of law analyzed in two parts. Saucier v. Katz, 533 U.S. 194, 201 (2001). The court first determines whether the facts alleged are adequate to show a constitutional violation, and, if so, whether the law regarding the right allegedly violated was clearly established. See id.; Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666-67 (8th Cir. 1992). If a plaintiff has failed to establish a violation of a constitutional right, no additional inquiry is necessary. Saucier, 533 U.S. at 201.

**A. Constitutional Violation**

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . [without] probable cause." U.S. Const. amend IV. As discussed above, it is undisputed that OPD officers subjected Doe to searches and seizures of his person and that they did so without probable cause or reasonable suspicion of wrongdoing. Accordingly, for purposes of this motion, the court finds that the OPD's proactive monitoring policy violated Doe's

---

[2] Plaintiffs also allege that defendants violated their Fourteenth Amendment rights to procedural due process and equal protection of the law. Defendants did not address these claims, and based on the court's conclusion about plaintiffs' likelihood of success on the Fourth Amendment claims, the court will not take up these claims at this time.

Fourth Amendment right to be free from unreasonable search and seizure. Plaintiffs must next demonstrate that this right was clearly established at the time of violation.

**B. Clearly Established Constitutional Right**

Police officers performing discretionary functions are shielded from liability for civil damages to the extent their conduct does not violate "clearly established statutory or constitutional rights" of which a "reasonable person" would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a law to be clearly established, it is only necessary that the unlawfulness of the officers' actions be apparent in light of preexisting law. See Anderson v. Creighton, 483 U.S. 635, 640 (1987). To determine whether qualified immunity applies, the court considers the "objective legal reasonableness" of an official's conduct in light of the information he or she possessed at the time of the alleged violation. See Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001). An official will be immune if it is objectively obvious that a reasonably competent official could have concluded that the disputed action was proper. See Malley v. Briggs, 457 U.S. 335, 341 (1986). Municipalities cannot be held liable for constitutional violations on a respondeat superior theory. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, they may be liable only if the execution of their policies or

customs resulted in the deprivation of a constitutional right. See id. at 694; Yellow Horse v. Pennington County, 225 F.3d 923, 928 (8th Cir. 2000).

The Supreme Court has recognized as a basic principle of Fourth Amendment law that "searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). A warrantless search or seizure is "per se unreasonable" unless the police can show the presence of exigent circumstances or another rare exception. Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971). Officers may conduct a search or seizure without a warrant based on probable cause "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." Griffin v. Wisconsin, 483 U.S. 868, 873 (1987). A state's operation of a predatory offender registration system presents such special needs. Cf. id. at 873-74 (discussing state's probation system); Gunderson v. Hvass, 339 F.3d 639, 643-44 (8th Cir. 2003) (Minnesota predatory offender registration system serves legitimate state interest). However, state guidelines regulating such a system must satisfy the Fourth Amendment's reasonableness standard. Cf. United States v. Vincent, 167 F.3d 528, 530 (8th Cir. 1999) (state probation guidelines). In this context, the test of reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell v.

<u>Wolfish</u>, 441 U.S. 520, 559 (1979).

Based on the facts before it, the court finds that OPD officers subjected Doe to searches and seizures absent requisite probable cause. As the Fourth Amendment right to be free from unreasonable search and seizure is a well-established right, even for predatory offender registrants, qualified immunity does not protect the defendant officers. <u>Cf.</u> <u>Vincent</u>, 167 F.3d at 530 (finding probationer's home protected by Fourth Amendment requirement that searches be reasonable). Although the officers acted pursuant to the BCA manual, the proactive procedures do not meet the Fourth Amendment reasonableness standard. Moreover, because Owatonna adopted and enforced a policy that was constitutionally infirm, the city is not protected by qualified immunity. <u>See</u> <u>Szabla v. City of Brooklyn Park, Minn.</u>, 486 F.3d 385, 389-91 (8th Cir. 2007). Accordingly, plaintiffs have demonstrated a reasonable likelihood of success on the merits of their Fourth Amendment claim. For these reasons, this <u>Dataphase</u> factor supports the issuance of injunctive relief.

**IV. Public Interest**

As the fourth factor, the court considers the public interest. Defendants argue that because of the high risks of recidivism posed by predatory offenders, there is strong public interest in continuing their proactive compliance practices. The court acknowledges that there is great public interest in monitoring

11

predatory offenders. However, there is an equally strong public interest in preserving constitutional rights. See Reinert v. Haas, 585 F. Supp. 477, 481 (S.D. Iowa 1984). Because the OPD has a means of monitoring predatory offenders without jeopardizing constitutional rights - by employing the reactive approach also advocated in the BCA training manual - the greater public interest is in issuing an injunction to protect plaintiffs' constitutional rights.

After a careful review of the file, record and issues raised at oral argument, the court determines that the Dataphase factors weigh in favor of plaintiffs.

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for a preliminary injunction [Doc. No. 12] is granted.

2. Defendants and all those acting in active concert or participation with them, in verifying John Doe's compliance with Minnesota Statutes § 243.166, shall not engage in proactive monitoring practices - including in-person contact with Doe, random photographing of Doe's person and vehicles, and direct quarterly visits to Doe's residence - until plaintiffs' cause of action has been resolved by the court.

Dated: September 4, 2007

                                                  s/David S. Doty
                                                  David S. Doty, Judge
                                                  United States District Court